R&R International Consulting versus Banco Do Brasil. Good morning, your honors. Hold on, Mr. Sampson. I don't see Mr. Polyer yet. There we go. Okay, Mr. Sampson. Thank you, your honor. And may it please the court, Daniel Sampson on behalf of the plaintiff appellant. Three primary errors underline the district court's order dismissing the lawsuit with prejudice. First, the district court erred by making evidentiary rulings on a motion to dismiss. The district court found that the appellee's evidence was persuasive, the appellant's evidence was unpersuasive, and that by the greater weight of the evidence, the appellees had set forth Brazilian law. Additionally, the district court accepted the appellee's translations of Brazilian law without comment, even though those translations marked Brazilian decree 370 as from 1990 rather than 1890. Next, the district court failed to consider that the LHBB notes at issue themselves state they are governed by that decree 370, which decree sets forth no statute of limitations or fixed payment maturity for the repayment of mortgage notes. That's article 318 of decree 370. Finally, the district court relied on the superior court of justices Camelotti decision as if Brazil, a civil court, civil code jurisdiction, followed stare decisis. Addressing Camelotti, I apologize, your honor. It seems to me the district court did commit an error in conflating the jurisdictional question on the commercial activities with compliance with the statute of limitations, and that the district court likely had jurisdiction, but that it was right that the suit was nevertheless untimely, and if that's true, then we don't even have to reach the act of state doctrine issue. That's at least where I have been coming into this, looking at this case. Perhaps you'd like to tell me why that's not right. Well, I agree with certainly part of what you said, which is your honor, which is that the statute of limitations issue is underlies both the act of state and the foreign sovereign immunity act rulings, and that the district court found that because the statute of limitations had passed, that that's why there was no direct effect of the commercial activity in the United States, and that's why the act of state doctrine is implicated, because as the district court found the act of state would essentially be the finding that the statute of limitations had not told. So the Brazilian court of justice, superior court of justice, which is the highest court for non-constitutional disputes, concluded that the colonization bonds issued by the bank in 1957 were subject to the 20-year statute of limitations in article 177 of the civil code of 1916. Isn't that right? That is right, and Camilotti certainly says what it says, although there does appear to be a constitutional issue as addressed in the briefing, that these are laws with specific subjects that therefore would not be governed by general law, and that the Brazilian supreme court could certainly come down differently. We're not asking this court to determine that Camilotti was wrongly decided, merely that there's no stare decisis, and even the penultimate paragraph of that opinion, which is found at docket entry 9-13, page 9, says that the issue could be resolved differently if different arguments were made, and it does not appear that Mr. Camilotti, or it's certainly not addressed in the Camilotti decision, it does not appear that the 18 of decree 370 governs, and so it's not a matter of... The problem that I'm having with that argument about Camilotti is this, I agree that Brazil does not follow the doctrine of stare decisis, but Camilotti remains the most recent, direct ruling from Brazil's highest court on the interpretation of its federal laws, and I'm hard-pressed to imagine a more persuasive source of authority for our analysis than this one. Even if it doesn't have the force of precedent, it sure is a powerful statement from Brazil's highest court about how they see this matter, and if I'm not going to rely on this, then what am I going to look to, to the extent that I'm required in an analysis of this kind to address my focus to foreign law? I would say first, again, that the Camilotti decision itself recognizes that it might have come down differently based on different arguments. That's the penultimate paragraph of the opinion, and I do agree that it is powerful, persuasive evidence, but the district court relied on it as if it was binding and that there was stare decisis, and therefore did not appear to look at Decree 370, Article 318, which states that there's no fixed payment maturity on the LHBB notes that were issued, and so if there's no fixed payment maturity in special law, what the Camilotti court appears to have done is apply general law, the statute of limitations found in the civil code of 1916 and 2016, and again, we're not asking the court... You didn't mention the Brazilian constitution in the district court, did you? No, that issue was not specifically raised. You forfeited that issue. Well, as addressed in the reply brief, although there was not specifically argued that the issue was argued that the Camilotti... I mean, look, I look at your opening brief and you never quoted the relevant constitutional provision. You didn't provide any supporting cases or secondary sources interpreting that provision, and you didn't even list the Brazilian constitution in the table of authorities, so the first time we get any real inkling that there might be some complicated here is in your reply brief. That's plainly forfeited. Well, I believe the opening brief does talk about a potential constitutional dimension of general versus specific law. I do agree that there is no... Even in the reply brief, there is no specific that there is no specific point of the Brazilian constitution. At the constitutional dimension, what was argued in the opening brief and the reply brief is that there might be a constitutional dimension to general law versus specific law, but I certainly agree it is not... There is no specific point of the constitution referred to in... Now, regardless of what way the district Camilotti, it seems to me... We're reviewing this de novo. Going back to Judge Marcus's question, it just seems to me that we'd be hard-pressed to find a more persuasive authority for us to rely upon in determining the law of Brazil about the statute of limitations as applies to these bonds. Perhaps, but that issue shouldn't have been decided on a motion to dismiss. The statute of limitations defenses are decided on motions to dismiss off the time. Sure, but this particular issue is bound up in Brazilian law. The Camilotti came with its own expert analysis of what that means. We requested at footnote 36 of the response to the motion to dismiss an opportunity to obtain our own expert if the court was going to make these evidentiary determinations on the motions to dismiss. We should have been given that opportunity and we would submit and request that the court reverse to permit us the opportunity to at least have an expert come in and explain why Camilotti is not the end of the discussion in Brazil. I take it you would agree that the complaint itself contains all of the facts necessary to determine whether the complaint is time barred. The bonds themselves are attached to the complaint and indicate the date of maturity that's laid out in paragraph 13 of the complaint as well. So there's really no reason why a court could not resolve this statute of limitations defense on a motion to dismiss. Is there? Yeah, I would disagree your honor and that's because the notes themselves that are attached to the complaint do not state a fixed payment maturity. This is agreed in both sets of translations docket 1-2 at page 43 and docket 9-9 at page 2. All that is listed on the notes themselves and what is attached to the complaint is that the notes can't be redeemed for the first 20 years. In other words, the time to redeem the maturity of 20 years after that. And so no, I would have to disagree that these determinations could be made on the complaint itself, which pleads that there is no statute of limitations issue for that very reason that the notes themselves do not contain a fixed payment maturity. Let me ask you just a quick question, sort of an offshoot of this. The district court considered and we may consider not only the statute in the case law in Brazil, but any affidavits that might have been attached to the parties pleadings and the motions. You had the opportunity to submit expert opinion on Brazilian law, didn't you? Well, we believe that this was a motion to dismiss and competing evidence wouldn't be decided on such a motion. And so I asked the court it to give a foreign law. You don't think the court on a motion to dismiss could take affidavits on foreign law? Well, those affidavits were assigned. Yes, you can. We believe that is all what I'm saying is it happens all the time on motions to dismiss when we're looking at the meaning of a foreign sovereign's law to submit expert testimony in the form of an affidavit from an expert saying this is what we think foreign law means. And that's considered regularly on a motion to dismiss under 12B6. And certainly under 12B1, if it went to the question of jurisdiction, the district court would be free and you would be entitled to submit materials of that kind. The only answer I can give, Your Honor, is the one I've already given. Okay. Thank you very much. Thank you, Your Honor. Okay. Mr. Pollard. Thank you, Your Honor. May it please the court. My name is Michael Pollard, and I represent the Apelio Banco do Brasil. I too would like to begin with the statute of limitations argument. I agree that there could not be a more persuasive source of Brazilian law than the Camelotti decision. Mr. Pollard, let's clear up jurisdiction first. The district court was wrong, wasn't it, to conflate the statute of limitations issue with the jurisdictional issue, right? I don't think so. I think he used the statute of limitations to talk about the direct effect under the Foreign Sovereign Immunities Act and to look at the subverting of the government expectations under the Act of State doctrine. So I think in what he described as the unique scenario of this case, I don't believe that was error. But I also agree with Your Honor that an affirmance under the statute of limitations is sufficient to affirm this judgment, and you wouldn't have to address the Act of State or Foreign Sovereign Immunities Act. Yeah, but there would be a defense. It would be, if the district court was wrong about jurisdiction but right to dismiss the suit, the dismissal would have been with prejudice based on the statute of limitations, that is, a merits decision as opposed to a dismissal without prejudice for lack of jurisdiction. That's correct, Your Honor. No, I think it was actually, he gave three independent bases. Certainly the statute of limitations is on the merits. I believe the others are kind of belt and suspenders rulings, which this court needn't address if it affirms under the statute of limitations. And I think the principle of- Is the Act of State doctrine a matter of subject matter jurisdiction? It didn't strike me as one. That this Foreign Sovereign Immunities Act, commercial exception, that's jurisdictional. It seems to me that insofar as the district court conflated that issue with the statute of limitations, it's fair that the district court had subject matter jurisdiction. The Act of State doctrine, it seems to me, is not jurisdictional. Maybe you can- Yes, I believe it's more of a quasi-abstention doctrine that the court declines to consider the activities of the foreign state. The district court would not be obliged to address that. It could just, if it concludes it has subject matter jurisdiction, could rule that the suit should be dismissed as untimely and not address Act of State. That's correct. And so really, as I think the discussion to date has demonstrated, this is a case that, as pleaded in the complaint, turned upon a question of foreign law. Brazilian law. Brazilian law was invoked in the complaint. The instruments were attached. The instruments talk about the 20 years, as Judge Marcus pointed out, paragraph 6 and paragraph 13 of the complaint also talk about after the lapse of 20 years. And interestingly, the complaint also alleged that there is no statute of limitations that's applicable, or if so, that it has been waived or it has been told. Now, as the district court properly pointed out, there was no evidence introduced ever that there was a waiver or a tolling of the statute of limitations. And so, the only question is whether these instruments lasted in perpetuity because there was no statute of limitations. And what's really striking about this particular case is that even though all parties agree that it is governed by Brazilian law, there was no Brazilian foreign law expert who was consulted even prior to the filing of this case, much less after the motion to dismiss was filed. And indeed, even after the dismissal, I mean, Mr. Sampson has pointed out that in footnote 37 of their response, they said, well, if you're going to consider this, then we should get an expert and we'd need 30 days. Now, of course, that was never brought to a formal motion such that there's no ruling by the district court on that request. You need a ruling in order to appeal it. And if there would be a ruling, of course, that would be subject to the abuse of discretion standard. But all that aside, after the judgment was entered, rule 59 would have afforded plaintiff an additional 30 days to vacate that, get the very same 30 days they asked for, get a Brazilian foreign law expert, file a motion for new trial and do it then. And that wasn't done. Do you think, counsel, that your colleague forfeited the right to raise a constitutional question under Brazilian law? I think he forfeited that issue. I think he forfeited the stare decisis issue. Yes. If you look at what actually was filed in the district court by the plaintiff in response to the motion to dismiss, there's a 21-page response filed. Two pages address the statute of limitations. And the overwhelming majority of that two pages addresses the conversion issue, which has been withdrawn in the reply brief here. The only mention of the merits of this statute of limitation appears in a footnote of that section of the brief where there's one sentence referencing Mr. Coelho, who is a non-attorney, his affidavit saying that decree 370 from 1890 eliminates any statute of limitations here. And so if I could, so that's all there is. There is no statement from a lawyer. Our affidavit said that's not a correct interpretation of decree 370. It talked about Camelotti. It cited 37 other cases where these colonization bonds were raised, including one involving one of the bonds in this Camelotti. In fact, Camelotti is only referenced once in plaintiff's papers, and that's to say that the Brazilian Supreme Court is the highest court, not the Brazilian Superior Court. That, of course, was debunked in our legal experts reply affidavit, Mr. Bollaccini, who spends about six paragraphs talking about the jurisdiction of the Superior Court versus the Supreme Court. And even if one were to, uh, by the way, I also think the translation issue was forfeited as well because that was never challenged in the district court. There was no post-judgment pleading attacking anything the district court did here, much less attacked with a lawyer's affidavit. But decree 370 of 1890 uh doesn't say there is no statute of limitations. Even if you were just to accept their translation, what it does actually is say there is no fixed payment maturity and it allows for drawing because it allows for drawings to be used. And in fact, decree 41093 of 1957, which implemented the law of 1954, which created this colonization portfolio, allows for drawings to be used. It says nothing about the statute of limitations. Moreover, um, and Mr. Bollaccini's affidavit says that it doesn't do it. Um, article 318 of decree 370, the one section, uh, that council references. And again, this is all American lawyer talk about Brazilian law, which wasn't addressed in the district court is that mortgage notes do not have a fixed payment maturity. They can be paid by drawings. That's the significant import of article 318. Moreover, that was forfeit, right? Yeah. Yes. I believe so, your honor. Yes. And the translation issue as well was forfeited. So allowing for draws is not the same as saying there is no statute of limitations. Moreover, on their face and plaintiff's own complaint, it is they allege there's a fixed payment maturity that after the lapse of 20 years, these became payable unless they were chosen for draw. So the district court understood the difference here and said the statute of limitations began after the maturity rate passes. So when all is said and done, the only thing we did is bring in the Brazilian statute of limitations referenced in Camelotti, bring in the most authoritative case in Brazil on the subject and use that to counter the allegation of the complaint, completely unsupported by any Brazilian expert, that there is no statute of limitations by virtue of article 318 of decree 370. The translation issue, even if the court were to say that it weren't forfeited, that was never any outcome determinative issue. Mr. Sampson argues that that should have been a fact-finding matter. Well, if it's fact-finding, then it would be subject to a clearly erroneous standard. It's not subject to de novo standard. That obviously isn't even raised in the opening brief, so it's forfeited for that reason alone. But there'd be no basis in which this court could find the district court, even if it did determine that as a fact, which it in quality of the evidentiary submissions by the parties on the subject of Brazilian law in this case. Moreover, the instrument attached to plaintiff's complaint actually uses the phrase on it, just as our translation did, colonization portfolio. And so any translation difference is completely immaterial. And moreover, the court, when it addressed our FSIA argument, that it wasn't a commercial transaction, in finding that it was commercial, likened these instruments to a mortgage note endorsed in blank held by a bank. So the court essentially treated it as if it were a mortgage. The only significance that counsel attaches at all to this purported translation difference is that it's a way to invoke Article 318 of Decree 370, which doesn't say, which we know doesn't say anything about the statute of limitations. It's silent as to the statute of limitations. And so for that reason alone, doesn't support their argument as well. So I think for all of those reasons, most of the arguments that were argued have been forfeited. There's no reason for this court not to apply the Superior Court decision in Camelotti. The only reason advanced by plaintiff was two decisions. Again, they were not explained in any pleading by a lawyer, but they were attached in response. And our supplemental reply affidavit demonstrates that one of them was reversed. The other is issued by a lower court. It predated Camelotti, and it doesn't address the statute of limitations, much less the enforceability of notes, whatever. So that's the only reason that was ever proffered below why the court shouldn't effectuate Camelotti. And I think the district court was quite right in finding those response cases to be unpersuasive. So for all of those reasons, Your Honor, I'd ask that this court affirm the considered decision of the district court. Thank you, Mr. Pollard. Mr. Sampson, you may want to unmute. Yes, you have four minutes. Thank you, Your Honor. I did go back and look at the opening brief, and the constitutional issue was raised at pages 25 and 26 of the opening brief. But never in the district court? In the district court, what was argued is that the statute of limitations does not, it was Mr. Coelho's affidavit. Mr. Sampson, to take a tempo question, the constitutional issue was not raised in the district court, right? Not specifically, as recognized in the reply brief. But it was certainly argued that the is no applicable statute of limitations. Additionally, it's certainly, again, it was not specifically raised with the word constitutional dimension are not there. That is true. I would point out that Mr. Pollard argues again, just as done in the bank's answer brief, that there is a vast difference in the quality of the evidence that was provided. That's an issue that shouldn't have been determined on a motion to dismiss. If what he's referring to, though, is the submissions about Brazilian law, about foreign law and its meaning, he's right about that, it seems to me. And it's perfectly appropriate to submit that kind of evidence on a motion to dismiss. Am I missing something? Again, the argument is not that it was wrong to submit it. But this was not when the district court started making rulings on which evidence was superior and what was persuasive and what was unpersuasive. We should have been permitted the opportunity to obtain an expert. And it is clear from the face of these notes that they are governed by... What prevented you from getting an expert on Brazilian law and submitting affidavits or declarations about it? That it was a motion to dismiss... What prevented you from doing that in response to the motion? Nothing except that it was on a motion to dismiss. And so nothing prevented it. We asked for the opportunity to provide an expert if these kinds of determinations were going to be made. And instead of being... Of course, they're going to be made. I mean, this is a motion to dismiss where one of the dispositive issues raised is the meaning of foreign law. Yes, Your Honor. For the reasons discussed, and in particular, because the LHBB notes themselves indicate that they are governed by Decree 370, that the Camelotti decision does not discuss Article 318 of Decree 370, and that it says that the issue could have come out differently if different arguments had been made, such as the fact that there's no fixed payment maturity, we'd ask the court to dismiss to reverse. Thank you, Mr. Sampson. We understand your case, and we're going to move to the next one.